IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

FEDERAL NATIONAL MORTGAGE
ASSOCIATION,

    Plaintiff,

      v.

SARA JO LAWRENCE,

    Defendant.

CIVIL ACTION NO.
1:25-cv-03127-TRJ

## ORDER

On September 2, 2025, Plaintiff Federal National Mortgage Association ("Fannie Mae") filed a motion to dismiss Defendant Sara Jo Lawrence's amended counterclaims against it. (Doc. 20). Upon review and consideration, Fannie Mae's motion is **GRANTED**.

## BACKGROUND

On November 10, 2020, Greystone Servicing Company LLC ("Greystone") made a loan to 215 Paper Mill Rd PCPRE, LLC (the "Borrower") in the amount of $6,960,000.00, which Greystone assigned to Fannie Mae. (Doc. 1-4; Doc. 1-7; Doc. 1-8; Doc. 17 at 3, 16).[1] The loan was obtained to "finance and maintain a residential rental property, consisting of an eighty-two (82) unit garden apartment, multifamily building" in Lawrenceville, Georgia. (Doc. 1 at 2). On the same day, Lawrence signed a Guaranty of Non-Recourse Obligations (the "Guaranty") for the Borrower's debt.

---

[1] As discussed *infra*, the Court may consider the documents attached to Fannie Mae's complaint without converting its motion to a motion for summary judgment.

(Doc. 1-1 at 12). The Guaranty contained a waiver provision, which provided that:

> Guarantor also waives any and all defenses, claims and discharges of Borrower, or any other obligor, pertaining to the Indebtedness, except the defense of discharge by payment in full . . . . Guarantor will not assert, plead, or enforce against Lender any defense of waiver, release, statute of limitations, res judicata, statute of frauds, fraud, incapacity, minority, usury, illegality or unenforceability which may be available to Borrower or any other person liable in respect of any of the Indebtedness . . . or any such other person, whether or not on account of a related transaction.

(*Id.* at 13).

On March 7, 2025, Fannie Mae informed Lawrence that the Borrower was in default and accelerated the loan. (Doc. 1-9; Doc. 17 at 23). On March 21, 2025, the Borrower, Lawrence, and Fannie Mae executed a Pre-Negotiation Letter ("PNL"). (Doc. 1-10; Doc. 17 at 18). The PNL also contained waivers, providing that:

> As additional consideration for Fannie Mae's willingness to engage in discussions about possible resolution of the defaulted Loan, Borrower hereby waives and releases any and all claims that it may have against Fannie Mae or the Servicer related to the Loan Documents as of the date of this letter. Furthermore, Borrower further waives and releases any and all defenses that it may have to the rights and remedies of Fannie Mae, and as appropriate, the Servicer, under the provisions of the Loan Documents and applicable law. Should any of the parties hereto terminate the discussions contemplated under this agreement, as provided for in Paragraph 6 below, the waivers and releases of claims and defenses by Borrower shall survive such termination.

(Doc. 1-10 at 4). The PNL defined the term "Borrower" as the Borrower and "the Key Principal." (*Id.* at 2). Lawrence signed the PNL as the Key Principal. (*Id.* at 9). According to Lawrence, "[p]rior to its execution, Fannie Mae represented that it

2

would not engage in resolution talks with [the Borrower] unless the PNL was executed." (Doc. 17 at 21).

Lawrence alleges that, between April 2, 2025 and May 5, 2025, she and the Borrower "attempted to engage Fannie Mae in settlement discussions," but "[i]nstead of engaging in any meaningful negotiations to resolve the matter, Fannie Mae demanded payment" of the amount due under the loan. (Doc. 17 at 20–21). On May 5, 2025, Lawrence claims that the Borrower "had no choice but to file bankruptcy" because of "Fannie Mae's unwillingness to resolve the matter amicably." (Doc. 1-2; Doc. 17 at 23). In addition to Fannie Mae's March 2025 notice of default, the Borrower's bankruptcy filing constituted another default event under the loan. (Doc. 1-4 at 82).

On June 4, 2025, Fannie Mae filed this lawsuit to hold Lawrence personally liable under the Guaranty for the Borrower's outstanding debt. (Doc. 1). On July 7, 2025, Lawrence filed her answer and counterclaims against Fannie Mae. (Doc. 5). On July 28, 2025, Fannie Mae moved to dismiss Lawrence's counterclaims. (Doc. 10). On August 18, 2025, Lawrence filed an amended answer and four amended counterclaims for (1) fraud, (2) declaratory judgment, (3) breach of implied warranty of good faith and fair dealing, and (4) punitive damages. (Doc. 17 at 24–30). On September 2, 2025, Fannie Mae again moved to dismiss Lawrence's amended counterclaims. (Doc. 20).

LEGAL STANDARD

"A motion to dismiss a counterclaim pursuant to Federal Rule of Civil Procedure 12(b)(6) is evaluated in the same manner as a motion to dismiss a complaint." *United*

3

*States v. Zak*, 550 F. Supp. 3d 1349, 1351 (N.D. Ga. 2021). Under Rule 12(b)(6), a counterclaim should be dismissed only where it appears that the facts alleged fail to state a "plausible" claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); FED. R. CIV. P. 12(b)(6). "A claim has facial plausibility when the [defendant] pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Thus, a claim will survive a motion to dismiss if the factual allegations in the pleading are "enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Moreover, at the motion to dismiss stage, "all well pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the [defendant]." *FindWhat Inv'r Grp. v. FindWhat.com*, 658 F.3d 1282, 1296 (11th Cir. 2011) (citation omitted). Courts are not required, however, to accept as true legal conclusions "couched" as factual allegations. *Twombly*, 550 U.S. at 555 (citation omitted).

## DISCUSSION

In its motion, Fannie Mae seeks dismissal of Lawrence's counterclaims because Lawrence waived any and all claims she may have against Fannie Mae under the terms of the Guaranty and the PNL. (Doc. 20-1 at 6–8). Fannie Mae also argues that Lawrence abandoned her declaratory judgment counterclaim. (*Id.* at 13–14). In her response, Lawrence argues that Counterclaims I, II, and IV are sufficiently pleaded, that the Guaranty and the PNL are unconscionable, and that the Court cannot consider the Guaranty and the PNL at the motion to dismiss stage. (Doc. 21 at 9–20).

4

As an initial matter, the incorporation-by-reference doctrine permits consideration of the Guaranty and the PNL without converting Fannie Mae's motion to one for summary judgment. (Doc. 21 at 10–11). Under the incorporation-by-reference doctrine, a court may consider evidence attached to a motion to dismiss—or, as here, attached to a complaint—if the document is "(1) central to the [defendant]'s claim; and (2) undisputed." *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002). As to the first prong, the parties do not dispute that the terms of the Guaranty and the PNL are central to Lawrence's counterclaims. (*See* Docs. 20-1, 21, 22); *Kalpakchian v. Bank of Am. Corp.*, No 1:18-cv-03235, 2019 WL 12426033, at *3 (N.D. Ga. Oct. 4, 2019) (holding that an agreement was central to the non-movant's claim where she alleged a "contractual relationship existed between the two parties and that [the movant] breached its contractual obligations" (citation modified)), *aff'd*, 832 F. App'x 579 (11th Cir. 2020).

As to the second prong, Lawrence argues that because she "did not admit to the authenticity of [the Guaranty and the PNL] in her Answer," "the documents are not 'undisputed' for purposes of [Fannie Mae's] motion," and "[t]herefore[ ] it would be error for this Court to rely on such documents at this stage of the proceedings." (Doc. 21 at 11). But "stipulation to [the] authenticity [of the documents] is unnecessary." *Kalpakchian*, 2019 WL 12426033, at *3. Instead, to "defeat consideration of an integral document on a motion to dismiss," the non-movant must "offer a factual basis [for] questioning [the documents] authenticity." *Stinson v. Twin Pines Coal Co., Inc.*, No. 1:14-cv-334, 2014 WL 4472605, at *3 (M.D. Ala. Sep. 11,

2014) (citation omitted). Lawrence articulates no such basis. Rather, she simply argues that "the authenticity of the documents has not been stipulated." (*Id.* at 11). This is insufficient to create a dispute over authenticity. *Kalpakchian*, 2019 WL 12426033, at *3; *see also Stinson*, 2014 WL 4472605, at *3 ("The clearest cases for admitting extrinsic documents on a motion to dismiss are those where the [defendant] alleges a breach of contract or some other contract-related claim, and [she] does not attach the contract [to her pleading]."). Here, Lawrence's counterclaims are exclusively related to the parties' contractual relationship, and she failed to attach any relevant documents to her pleading. (*See, e.g.*, Doc. 17 at 27–29). For these reasons, the Court may consider the Guaranty and the PNL attached to Fannie Mae's complaint in reviewing Lawrence's motion to dismiss. *Kalpakchian*, 2019 WL 12426033, at *3; *Horsley*, 304 F.3d at 1134.

### A. Counterclaim I: Fraud

Fannie Mae argues that Lawrence's counterclaim for fraud is subject to dismissal due to the waiver provisions in both the Guaranty and the PNL. (Doc. 20-1 at 6–7). Lawrence, however, argues that the provisions are unconscionable. (Doc. 21 at 13–14). Given the plain language of the agreements between the parties, the Court is bound to agree with Fannie Mae.

#### 1. Waiver Under the Guaranty

The plain language of the Guaranty provides that Lawrence "waives any and all defenses [and] claims," and that she "will not assert, plead or enforce against [Fannie Mae] any defense of . . . fraud." (Doc. 1-1 at 13). It follows that Lawrence

waived her right to assert her counterclaim for fraud under the Guaranty. *See Compass Bank v. Limon*, 464 F. App'x 782, 787 (11th Cir. 2012) (concluding that the guarantors waived their ability to assert a counterclaim in a provision releasing the lender "of and from any and all claims . . . arising from the Loan Documents").

Nonetheless, Lawrence argues that the Guaranty is unenforceable because it is unconscionable. (Doc. 21 at 13–14). "An unconscionable contract is one abhorrent to good morals and conscience where one of the parties takes a fraudulent advantage of another, an agreement that no sane person not acting under a delusion would make and that no honest person would take advantage of." *Abdulla v. Klosinski*, 523 F. App'x 580, 586 (11th Cir. 2013). "[T]he basic test for determining unconscionability is 'whether, in the light of the general commercial background and the commercial needs of the particular trade or case, the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract.'" *Dale v. Comcast Corp.*, 498 F.3d 1216, 1219 (11th Cir. 2007) (quoting *NEC Techs., Inc. v. Nelson,* 267 Ga. 390 (1996)). Here, Lawrence argues that, because the waiver is "one-sided," it is unconscionable. (Doc. 21 at 13–14). Specifically, Lawrence argues that if she breaches the contract, Fannie Mae "is entitled to seek a myriad of remedies," whereas if Fannie Mae "breaches any provision of the contract, no matter how egregious its action, [Lawrence] has zero remedies," and "[s]uch a one-sided waiver cannot be considered conscionable." (*Id.* at 14).

The kind of one-sidedness described by Lawrence, where she waived her claims and was left with little recourse in the event of a default, is not the kind of agreement

that "no sane man not acting under a delusion would make and that no honest man would" participate in. *See In re Checking Acct. Overdraft Litig. MDL No. 2036,* 672 F.3d 1224, 1229 (11th Cir. 2012) (affirming finding that "take-it-or-leave-it" presentation of agreement with no opt-out provision was not *per se* unconscionable). Under Georgia law,[2] "a guarantor may consent in advance to a course of conduct which would otherwise result in his discharge," such as "waiving defenses which would otherwise be available to a guarantor." *Ramirez v. Golden*, 223 Ga. App. 610, 611 (1996). And "Georgia courts have consistently enforced waivers contained in guaranties, holding that parties have the right to freely enter into contracts, including waivers." *In re Buckhead Oil Co., Inc.*, 454 B.R. 242, 247 (Bankr. N.D. Ga. Mar. 21, 2011). Longstanding Georgia precedent precludes a finding that Lawrence's waiver of "any and all defenses [and] claims," including "any defense of . . . fraud" is unconscionable. *See Hampton Island, LLC v. Asset Holding Co. 5, LLC*, 320 Ga. App. 880, 886 (2013) (finding the guarantors' waiver of all "legal or equitable defenses whatsoever . . . to the extent permitted by law" enforceable); *Brookside Cmtys, LLC v. Lake Dow N. Corp.*, 268 Ga. App. 785, 786 (2004) (upholding a waiver of "all present and future claims, rights and remedies" in a guaranty).

    2.  <u>Waiver Under the PNL</u>

Similarly, by executing the PNL, Lawrence agreed to "waive[ ] and release[ ]

---

[2] The Guaranty contains a choice of law provision that requires application of the law of the "Property Jurisdiction." (Doc. 1-1 at 9). The "Property Jurisdiction" is defined in the mortgage document as "the jurisdiction in which the Land is located." (Doc. 1-5 at 8). The Land is described at Exhibit A of the mortgage, and it is located in Gwinnett County, Georgia. (*Id.* at 24).

any and all claims that [she] may have against Fannie Mae," as well as "any and all defenses . . . to the rights and remedies of Fannie Mae." (Doc. 1-10 at 2, 4). Fannie Mae argues Lawrence's counterclaims are subject to dismissal on these waiver grounds alone. (Doc. 20-1 at 6). In response, Lawrence contends that the PNL is both procedurally and substantively unconscionable. (Doc. 21 at 12–14).

"Procedural unconscionability addresses the process of making the contract, while substantive unconscionability looks to the contractual terms themselves." *Nelson*, 267 Ga. at 392. Procedural unconscionability considers "age, education, intelligence, business acumen and experience of the parties, their relative bargaining power, the conspicuousness and comprehensibility of the contract language, the oppressiveness of the terms, and the presence or absence of a meaningful choice." *Id.* Lawrence makes no argument regarding the age, education, intelligence, business acumen and experience of the parties. (*See* Doc. 21). As to relative bargaining power and meaningful choice, however, Lawrence argues "[i]f [she] refused to sign the [PNL] agreement, [Fannie Mae] would refuse to enter any negotiations," and Fannie Mae "had already threatened foreclosure." (Doc. 21 at 13). According to Lawrence, she "had no other choice other than to enter into the [PNL] agreement, which was drafted by [Fannie Mae], or face foreclosure." (*Id.*) But, at the time the parties executed the PNL, Fannie Mae was already entitled to refuse negotiations and pursue other remedies. (Doc. 1-10 at 3 ("[B]ecause of the default under the Loan, . . . Fannie Mae is entitled to pursue other rights and remedies available under the Loan Documents and applicable law.")). Indeed, the Borrower was already in default, and the loan had been accelerated.

9

(*Id.*) Lawrence acknowledged as much by executing the PNL, which provided that she "hereby acknowledges that Borrower is in default under the Loan Documents and that Fannie Mae is entitled to exercise any and all rights and remedies set forth in the Loan Documents, at law, or in equity." (*Id.* at 4). Under these circumstances, the Court cannot conclude that the PNL was so "abhorrent to good morals and conscience" that it should be deemed unconscionable. *Abdulla*, 523 F. App'x at 586.

Lawrence cites *Mullis v. Speight Seed Farms*, 234 Ga. App. 27, 28 (1998) in support of her argument that the PNL was procedurally unconscionable. (Doc. 21 at 12). In *Mullis*, a farmer purchased tobacco seeds from a manufacturer over the phone, and, after discovering the seeds were defective, found that the seed label limited the manufacturer's liability for breach of warranty and shifted the allocation of risk to the farmer. 234 Ga. App. at 29–30. The court concluded that the terms on the label were unconscionable because the plaintiff, "like most farmers, was not in a position to bargain for more favorable contract terms," he "purchased the seed over the telephone," and he "was not made aware" of the disclaimers on the label. *Id.* at 30.

This case is nothing like *Mullis.* Lawrence personally guaranteed multiple six-figure loans[3] on behalf of businesses she had a financial interest in. (*See* Docs. 1-1 at 2 ("Guarantor has an economic interest in Borrower or will otherwise obtain a

---

[3] The Court takes notice of the related case filed by Fannie Mae against Lawrence in connection with another real estate loan Lawrence personally guaranteed. *See Federal National Mortgage Association v. Lawrence*, 1:25-cv-03125-TRJ (N.D. Ga. 2025). The Court make take judicial notice of publicly-filed documents at the Rule 12(b)(6) stage. *U.S. ex rel. Osheroff v. Humana Inc.*, 776 F.3d 805, 811 n.4 (11th Cir. 2015).

material financial benefit from the Mortgage Loan."), 1-3 at 2, 1-4). In doing so, Lawrence expressly acknowledged that she understood the nature of her obligations, understood the risks, had the opportunity to consult counsel, and had not relied on Fannie Mae "for any guidance or expertise in analyzing" the Guaranty or its consequences. (Doc. 1-1 at 9–10). Lawrence also had the opportunity to read the clear terms of the PNL before executing it, and the PNL explicitly provided that she "may wish to have legal counsel present or available." (Doc. 1-10 at 2). Unlike the farmer in *Mullis,* Lawrence was not caught off guard by the terms of either agreement, repeatedly acknowledged her understanding and opportunity to seek legal advice, and she has not otherwise presented evidence that the terms of either agreement were inconsistent with "the general commercial background and the commercial needs" of large real estate transactions like the one at issue. 234 Ga. App. at 29.

For the same reasons discussed above regarding the substantive unconscionability of the Guaranty, Lawrence's argument that the PNL is substantively unconscionable because it is "one-sided" fails. Substantive unconscionability considers the contractual terms themselves. *Nelson*, 267 Ga. at 392. Though Lawrence contends that the waiver provision in the PNL is one-sided, "Georgia law recognizes and protects the freedom of parties to contract. This is true even though they may enter into contracts that are unreasonable or which may lead to hardship." *Thomas v. T & T Straw, Inc.*, 254 Ga. App. 194, 195 (2002) (citation omitted); *Simmons v. Select Ins. Co.*, 183 Ga. App. 128, 129 (1987) ("Competent parties are free to choose, insert, and agree to whatever provisions they desire in a

11

contract . . . unless prohibited by statute or public policy."). And "[n]umerous . . . decisions from Georgia courts confirm that Georgia consistently enforces broad waivers of guarantor's rights to assert defenses." *First-Citizens Bank & Tr. Co. v. Parker Med. Holding Co.*, 664 B.R. 905, 923 (Bankr. N.D. Ga. 2024) (collecting cases); *see also Bank of Ozarks v. 400 S. Land Co., LLC*, No. 2:11-cv-00129-RWS, 2012 WL 3704807, at \*14 (N.D. Ga. Aug. 24, 2012) (granting the plaintiff's motion to dismiss the defendant's counterclaims based on the waiver of "any and all claims"). Lawrence had the freedom to enter these agreements with Fannie Mae to secure the loans needed to purchase these properties, and she is now bound by them. Thus, Lawrence cannot plausibly state a counterclaim for fraud that is barred by the waiver provisions in the PNL and the Guaranty.

## B. Counterclaim II: Declaratory Judgment

Fannie Mae seeks dismissal of Lawrence's counterclaim for declaratory judgment because she failed to respond to Fannie Mae's arguments regarding her claim. (Doc. 20-1 at 13; Doc 22 at 10). Under Local Rule 7.1(B), failure to file a response to a party's motion "shall indicate that there is no opposition to the motion." Local "Rule 7.1(B) requires not just that a party generally 'respond' to a motion but mandates that a party respond to each portion of a motion." *Kramer v. Gwinnett Cnty.*, 306 F. Supp. 2d 1219, 1221 (N.D. Ga. 2004). Here, Lawrence did not make any argument to support her counterclaim for declaratory judgment. (*See* Doc. 21). And where, as here, a party fails to brief and argue a claim in their response brief in contravention of the Local Rules, the Court may deem that claim abandoned. *See*

12

*Coal. for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1326 (11th Cir. 2000); *see also Gore v. Jacobs Eng'g Grp.*, 706 F. App'x 981, 986 (11th Cir. 2017) (affirming dismissal of a claim where the non-movant "failed to address or respond in any way to [the movant's] arguments" in a motion to dismiss). In any event, Lawrence's counterclaim is contractually barred by the waiver provisions in the Guaranty and the PNL. (Doc. 1-1 at 13; Doc. 1-10 at 2, 4).

### C. Counterclaim III: Breach of Warranty of Good Faith & Fair Dealing

Fannie Mae also moves to dismiss Lawrence's counterclaim for breach of the warranty of good faith and fair dealing. (Doc. 20-1 at 14–15). In her amended counterclaims, Lawrence claims that Fannie Mae breached the PNL by failing to negotiate in the manner set forth under the PNL. (Doc. 17 at 27–29). But, as the Court discussed *supra*, the waiver provisions that preclude her counterclaim for fraud also bar her claim for breach of the warranty of good faith and fair dealing—Lawrence waived, under the terms of both the Guaranty and the PNL, any and all claims and defenses against Fannie Mae. (Doc. 1-1 at 13; Doc. 1-10 at 2, 4). Given that Lawrence's third counterclaim is contractually barred, it must fail. *Limon*, 464 F. App'x at 787; *Rd. Atlanta, LLC v. Culver*, No. 2:17-cv-00132-RWS, 2017 WL 7519218, at *1 (N.D. Ga. Nov. 27, 2017) (dismissing all of the guarantor's counterclaims based on a waiver provision in the guaranty).

### D. Counterclaim IV: Punitive Damages

Finally, Fannie Mae argues that Lawrence's counterclaim for punitive damages fails because her "underlying tort claim fails." (Doc. 20-1 at 17–18).

"According to Georgia law, without a tort claim, punitive damages are simply not recoverable." *Harris v. Fulton-Dekalb Hosp. Auth.*, 255 F. Supp. 2d 1347, 1359 (N.D. Ga. 2002). Because the Court agrees that Lawrence's tort-based counterclaims must be dismissed, her counterclaim for punitive damages must fail, too. *Id.*; *Mann v. Taser Int'l, Inc.,* 588 F.3d 1291, 1304 (11th Cir. 2009) ("A punitive damages claim is derivative of a plaintiff's tort claim, and where a court has dismissed a plaintiff's underlying tort claim, dismissal of a plaintiff's punitive damages claim is also required.").

## CONCLUSION

For these reasons, Fannie Mae's Motion to Dismiss Lawrence's Amended Counterclaims (Doc. 20) is **GRANTED**. . A Zoom status conference is scheduled for **May 14, 2026** at **11:00 a.m.** before Judge Tiffany R. Johnson, after which the Court will issue a Scheduling Order. The parties will be emailed a Zoom link prior to the status conference.

SO ORDERED, this 5th day of May, 2026.

_____
TIFFANY R. JOHNSON
United States District Judge

14